OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a Justice of the Ovid Town Court, Seneca County, asks us to review a determination of the State Commission on Judicial Conduct, sustaining five charges of misconduct and removing him from office
 
 (see,
 
 NY Const, art VI, § 22; Judiciary Law § 44). Pursuant to our plenary review of the record, and upon our evaluation of the Commission’s determination, we conclude that all charges were established and justify removal.
 

 Charges I and II are based on allegations that petitioner, as Town Justice, violated regulations governing the handling of court funds. Charge I alleged that petitioner failed to deposit court funds in his official account within 72 hours after receipt, in violation of the Uniform Civil Rules for the Justice Courts (22 NYCRR) § 214.9 (a). Charge II alleged that he failed to remit court funds to the State Comptroller by the tenth day of the month following collection, in violation of Uniform Justice Court Act § 2021 (1), Town Law § 27 (1) and Vehicle and Traffic Law § 1803 (8).
 

 Petitioner admits that between August 1996 and December 1996 his court account was deficient a total of $2,886.64. Petitioner also concedes that, during that time period, he did not report or remit any funds to the State Comptroller. By letter dated January 15, 1997, the State Comptroller’s office advised petitioner that it was suspending his salary due to his failure to properly account for court funds. On January 20, 1997, petitioner mailed the missing monthly reports and funds to the Comptroller, stating in a cover letter that he had “no
 
 *452
 
 reason or alibi to give you for being tardy. There is no excuse.” Thereafter, by letter dated January 21, 1997, the Commission’s staff advised petitioner that it was investigating his failure to report and remit funds. The Commission asked petitioner to provide court records of the amount of money he collected between August and December and bank records indicating that the funds had been deposited into petitioner’s court account. In response, petitioner submitted only the court records establishing that he had received the funds, stating again that he had “no reason or alibi for being tardy.”
 

 One month later, in February 1997, petitioner again neglected the administrative requirement that he deposit funds promptly in his court account. By the end of May 1997, the account was $2,842.80 short. Petitioner does not dispute the facts underlying Charges I and II and we have no basis to disturb the determination of the Commission sustaining them.
 

 Charge III of the Complaint arises from a disagreement between petitioner and a local attorney who represented a funeral home in an action against petitioner for an unpaid bill. A judgment in the amount of $1,485 was entered against petitioner. At the Commission hearing, the attorney testified that in April 1997 he received a telephone call from petitioner after petitioner learned of the judgment. Telling the attorney that he had been a Town Justice for 10 years, petitioner accused him of being dishonest and indicated that he would take it upon himself to discredit the attorney’s reputation.
 

 Several weeks later, the attorney’s client informed him that petitioner had called the funeral home numerous times. The attorney called petitioner and asked that all communication with his client be conducted through him. Petitioner responded that he would continue to call the client and only an order of protection would stop him. He went on to utter a stream of derogatory remarks about the client. Petitioner’s invective ultimately impelled the attorney to hang up.
 

 In May 1997, the attorney filed a complaint against petitioner with the Commission. When he learned of the complaint, petitioner went to the attorney’s office and confronted his secretary in an irate manner. Petitioner was angrily waving a copy of the complaint, shouting that he intended to sue the attorney for slander. The secretary testified that she felt threatened by petitioner. The Referee credited both the attorney and his secretary’s testimony and the Commission found the charge established. We find no basis for disturbing that determination.
 

 
 *453
 
 Charge IV arose out of an incident in which petitioner allegedly acted in a retaliatory manner toward a second attorney. In 1989, this attorney had filed a complaint against petitioner with the Commission alleging that petitioner improperly requested him to pay $50 to secure a jury trial in a criminal case. Seven years later, the attorney was representing a different criminal defendant in a matter assigned to petitioner. The attorney requested that petitioner recuse himself. In open court, petitioner became aggressive toward him, refused to recuse himself, questioned him about the complaint he had lodged before the Commission and stated in a loud voice, ‘You should have paid me the $50 [in the 1989 case],” followed by profanity. The Referee found this second attorney’s testimony credible and we find no basis for disturbing that determination.
 

 In February 1999, the Commission filed a Supplemental Charge I against petitioner, alleging that petitioner suspended a traffic defendant’s driver’s license out of personal animosity for the defendant’s attorney — a third attorney. As the Referee found, petitioner had previously agreed to recuse himself from the case because of hostility between him and the attorney. On December 4, 1997, however, when the case was called in Town Court, petitioner refused to recuse himself. After some discussion between this attorney and petitioner, the attorney and his client left the Town Court. By letter dated December 22, 1997, petitioner again advised the attorney that although he had previously indicated he would recuse himself, he had changed his mind. The letter further stated that the attorney had left the courtroom “in a huff” with nothing in the case resolved.
 

 On January 24, 1998, petitioner notified the Department of Motor Vehicles that the client had failed to appear before him within 60 days after a scheduled court appearance for a moving violation. As a result, the Department of Motor Vehicles suspended the client’s license pursuant to Vehicle and Traffic Law § 510 (4) (a). At the Commission hearing, petitioner acknowledged that this attorney and his client had appeared before him on December 4, 1997. Because, however, the attorney exhibited “his bad attitude again” and “walked out in a huff with nothing transpired,” petitioner considered it a nonappearance. Petitioner then admitted that one of the reasons he suspended the client’s license was the attorney’s failure to “make himself professional and apologetic to the court for his actions.” We accept the Commission’s determination as to this charge as well.
 

 
 *454
 
 In all, we conclude that petitioner violated the following Rules Governing Judicial Conduct: 22 NYCRR 100.1 (a judge must observe “high standards of conduct * * * so that the integrity and independence of the judiciary will be preserved”); 22 NYCRR 100.2 (A) (a judge must “act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary”); 22 NYCRR 100.3 (A) (a judge’s “judicial duties * * * take precedence over all the judge’s other activities”); 22 NYCRR 100.3 (B) (1) (a judge must “be faithful to the law and maintain professional competence in it”); and 22 NYCRR 100.3 (C) (1) (a judge must “diligently discharge the judge’s administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration”). Petitioner repeatedly abused the power of his office, demonstrated a lack of judicial temperament and mishandled public funds. Petitioner’s actions both on and off the bench demonstrate a pattern of serious disregard for the standards of judicial conduct. These standards “exist to maintain respect toward everyone who appears in a court and to encourage respect for the operation of the judicial process at all levels of the system”
 
 (Matter of Roberts,
 
 91 NY2d 93, 97). Moreover, we are satisfied that this Court should accept the Commission’s determined sanction of removal
 
 (see,
 
 NY Const, art VI, § 22 [d], [h]; Judiciary Law § 44 [1], [9]).
 

 Accordingly, the determined sanction should be accepted, without costs, and petitioner removed from the office of Town Justice of the Town of Ovid.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur in Per Curiam opinion.
 

 Determined sanction accepted, without costs, and Robert M. Corning, Sr. removed from the office of Justice of the Ovid Town Court, Seneca County.